<u>NOT FOR PUBLICATION</u>                                    [Docket No. 19]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| ANTHONY LINDSEY, et al. | |
| Plaintiffs, | |
| v. | Civil No. 04-3815(RMB) |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Richard T. Fauntleroy
Richard T. Fauntleroy, P.C.
1525 South Main Street
Pleasantville, New Jersey 08232
        Attorney for Plaintiff

Nicole S. Morgan
Timothy Ballard
Office of the New Jersey Attorney General
RJ Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
        Attorneys for Defendants New Jersey Department of
        Corrections, Melinda S. Haley, Stephen Walters, Rayford
        Stevens, David Lloyd and Lawrence Ashton

**Bumb**, United States District Judge:

        This matter comes before the Court upon a motion by

Defendants: New Jersey Department of Corrections, Melinda S.

Haley (formerly Melinda Green), Stephen Walters, Rayford Stevens,

and Lawrence Ashton (hereinafter "moving Defendants" or

"Defendants")[1] for summary judgment pursuant to Federal Rule of

Civil Procedure 56.  The Court heard oral argument on this motion

and requested additional briefing.  For the reasons set forth

below, Defendants' motion will be granted in part and denied in

part.


**Background:**

New Jersey Local Rule 56.1 provides that "[o]n motions for

summary judgment, each side shall furnish a statement which sets

forth material facts as to which there exists or does not exist a

genuine issue."  Facts in a submitted statement of material facts

which are not contested are deemed admitted.  <u>Hill v. Algor</u>, 85

F. Supp. 2d 391, 408 n.6 (D.N.J. 2000).  This Court has labored

to decipher what are indeed the undisputed facts in this case by

comparing the parties' papers and referencing the record.  The

following summary of the relevant facts in this case is drawn

from "undisputed" (meaning well-supported by the record) factual

---

[1] In addition to the above named Defendants, Plaintiff's
Amended Complaint asserts allegations against Devon Brown,
Charles Ellis, Susan Maurer, W. Stanley Nunn, Kathryn MacFarland
and Keith Phillips, who were removed from the above-captioned
matter by stipulation. [Docket No. 24].  This leaves Mary L.
Cupo-Cruz, Chief Kellet, and Lt. Richard Battle as named
Defendants in this action who are not parties to this motion.  At
oral argument, Plaintiff conceded that Cupo-Cruz, Kellet, Battle
and David Lloyd were never served.  Therefore, all remaining,
properly served, Defendants are party to this motion.

statements contained in both parties' Rule 56.1 statements. While both parties submitted Rule 56.1 statements, Plaintiff did not affirm or deny the "undisputed" facts in Defendants' initial 56.1 statement.

For purposes of the instant motion, the actions of the following Defendants are at issue:

a.   Melinda S. Haley (formerly known as Melinda S. Green), an investigator with the Equal Employment Division ("EED") of the Department of Corrections.
b.   Captain Steven Walters ("Walters"), allegedly Plaintiff's "supervisor's supervisor" (Pl.'s Dep. I at 67:17-19).
c.   Chief Rayford Stevens ("Stevens"), Plaintiff's supervisor who reported to Captain Walters (Pl.'s Dep. I at 68:1-6).
d.   Captain Lawrence Ashton ("Ashton"), Plaintiff's superior.

Plaintiff has a long and extremely involved history with the Department of Corrections and, for that reason, the relevant facts related to Plaintiff's claims will be listed below in chronological order and described briefly.[2]

- Plaintiff, a black male, commenced employment as a Correctional Officer with the Department of Corrections ("DOC") on or about May 14, 1988.  (Pl.'s Dep. I at 14:8).

- From March 1996 through the time of his termination, Plaintiff worked at South Woods State Prison. (Pl.'s Dep. I at 30 & 35).

- On August 11, 2000, a civilian food service worker named Angelo Soto ("Soto") complained to the Equal Employment Division ("EED") of the Department of Corrections ("DOC") that he was subjected to discrimination and harassment based

---

[2] Plaintiff's deposition is contained in three volumes referred to herein as I, II, and III, respectively.

on race and national origin against several corrections officers (none of whom is a Defendant in the instant motion). (Pl.'s Ex. H). On August 22, 2000, Plaintiff provided the EED with a handwritten statement stating that the persons charged acted improperly. (Pl.'s Ex. I).

- On December 8, 2000, Plaintiff filed an internal complaint of discrimination with the EED against corrections officers (none of whom is the subject of this case) alleging that "lewd pornography type pictures" were shown to the Prison chaplain, Dr. Youssef. (Pl.'s Ex. K & Defs.' Ex. L). The EED conducted an investigation of the complaint and determined that the allegations were unsubstantiated. (Id.).

- On January 2, 2001, Plaintiff was served a disciplinary charge for insubordination for instructing an inmate to report to work in the kitchen area, where he was not assigned to or medically cleared to work. Prior to this, Lieutenant Battle ("Battle"), Plaintiff's supervisor, told Plaintiff not to use inmates in the food service area unless they were assigned there. (Pl.'s Ex. M & Defs.' Ex. M). Following an investigation, the EED determined that there was a legitimate basis for the discipline.

- On January 4, 2001, a second charge of insubordination was filed because Plaintiff requested a change on the detail assignment of another inmate from Sgt. Callahan while Battle was on vacation. This was despite the fact that Battle already denied his request. (Id.) The EED found that there was a legitimate basis for the discipline. (Id.).

- On January 19, 2001, Plaintiff filed an EED complaint against Battle, also a black male, alleging that Battle retaliated against Plaintiff because Plaintiff acted as a witness in the Soto investigation. (Pl.'s Ex. M & Defs.' Ex. M). Plaintiff alleged that Battle told Plaintiff that he was upset because he received a written counseling as a result of the Soto incident and warned Plaintiff that "things come back around." (Id.). More specifically, Plaintiff alleged that the two disciplinary actions taken against him were retaliatory. Because the EED found a legitimate basis for the disciplines, it did not find that the actions were retaliatory. (Id.).

- On March 20, 2001, Mary Cupo-Cruz, Director of the EED, wrote a Memorandum to Stanley Nunn, Administrator of the Prison, stating that the allegations of retaliation made by Lindsey were unsubstantiated. (Pl.'s Ex. O). The

Memorandum went on to stress that Lt. Battle exercised "poor judgment and unrefined supervisory skills" and suggested that Battle be "vigorously counsel[ed]." (Id.). Additionally, the Memorandum states that Sgt. Callahan stated that there is a problem between Lindsey and Battle and that Battle has "ranted" about the counseling letter [re: the Soto matter] and is "out to get Lindsey." (Id.) This Memorandum states that Battle must be held accountable for this and suggests that he be temporarily reassigned. (Id.).

- On April 9, 2001, a Memorandum from D. Kellet to Kathryn MacFarland indicates that Battle was spoken to regarding his supervisory skills and that he has been enrolled in several training sessions. (Pl.'s Ex. P). The Memorandum indicates that Sgt. Callahan denied making any of the statements attributed to him by the March 20, 2001, EED Memorandum and that Kellet would not reassign Battle. (Id.)

- In June of 2001, Plaintiff filed a complaint (dated May 23, 2001) against Captain Lawrence Ashton, a white male, alleging race discrimination, racial harassment and retaliation. (Defs.' Ex. N). The EED closed its file on the complaint after Plaintiff failed to provide more information regarding the charge because his allegations were vague. (Defs.' Ex. P.).

- On July 2, 2001, a civilian worker, Elizabeth Sockriter, filed an EED complaint against Battle alleging race and sex discrimination and harassment. (Pl.'s Ex. Q). In the investigation report, it states that "Battle said he believes SCO Anthony Lindsey is behind Sockriter filing the EED complaint." (Id.).

- On August 13, 2001, Plaintiff received a disciplinary charge for failing to properly pack and/or inventory an inmate's television set. (Def.'s Ex. E). Plaintiff was found liable but the sanction was reduced from a two-day suspension to a written reprimand. (Id. & Pl.'s Dep. I at 188:11-21).

- On October 24, 2001, Lindsey filed his second EED complaint against Ashton alleging that the August 13, 2001, discipline against him was the result of race discrimination, harassment and retaliation. (Def.'s Ex. R). The EED found Lindsey's complaint unsubstantiated because the disciplinary charges against him were legitimate. (Id.).

- In 2001, Lindsey received corrective counseling because an

inmate under his supervision failed to perform job details in a timely fashion. (Pl.'s Dep. I 85:8-87:15)

- In May or June of 2002, Lindsey received corrective counseling for overstepping his authority and getting involved in other officers' affairs. (Pl.'s Dep. I at 96:10-101:14).  Following this incident, Plaintiff was instructed, during a meeting with Captain Walters, that he should not overstep his authority and refrain from getting involved in other officers' affairs. (Defs.' Ex. G).

- Plaintiff received another corrective counseling in July of 2002 for having an incorrect count of inmates on a count slip. (Pl.'s Dep. I at 104:24-107:16).  Sergeant Stevens counseled Plaintiff about this incident.  (Id.).

- On July 24, 2002, Captain Walters conducted a corrective counseling session with Plaintiff regarding his obligation to follow directions and orders from his supervisors (Defs.' Ex. G).  At this meeting, Walters stated that he gave Plaintiff "specific and clear direction that he is not to conduct investigations without approval from is superior." (Id.).  Walters also directed Plaintiff to report illegal activity to Special Investigations.  (Id.).

- On July 25, 2002, Plaintiff filed a "Special Report" with the Special Investigations Division ("SID") of the DOC. This report references allegations of threats, intimidation, bogus charges, racial comments to inmates, violations of the US mail, denial of medical treatment of inmates, and harassment.  (Defs.' Ex. Y).  On September 27, 2002, Plaintiff was sent a letter from Chief of Staff Charles Ellis stating that the allegations would be "fully reviewed."  (Defs.' Ex. Z).

- On July 28, 2002, Plaintiff disobeyed Captain Walters's order when he questioned an inmate from another housing unit about a situation not in his realm of responsibility or area of command.  (Defs.' Ex. F).  On August 29, 2002, Walters issued a Disciplinary Action Notice to Lindsey for insubordination and suspended him for five days.  (Id.).

- Plaintiff submitted a letter of resignation on December 6, 2002, which was to become effective December 20, 2002. (Pl.'s Dep. Vol. II 141).[3]

---

[3] Plaintiff alleges that when he handed the resignation in to Chief Stevens, the Chief did not want to hear what he had to

- Plaintiff was out on medical leave when he submitted his letter and was not expected to return until December 26, 2002. (Pl.'s Dep. II at 141:16-143:2).

- Plaintiff's resignation letter made references to discrimination, nepotism and harassment. (Pl.'s Depo II at 141:16-143:2 & III at 65:3-66:21; Defs.' Ex. H).

- After submitting his letter of resignation, Plaintiff was contacted by Sergeant Mildred Kozinski and was informed that he was to appear at the prison for a meeting to discuss the allegations in the letter of resignation. (Pl.'s Dep. III at 36:25-39:19 & II 140:23-141:3).

- Plaintiff also received two letters informing him to come to the prison - one dated December 11, 2002 (from Harry Chance, Administrative Correction Captain) and one dated December 17, 2002 (from Captain Stevens). (Defs.' Ex. J & K). Plaintiff did not appear either time. (Pl.'s Dep. III 41:20-42:16 & 45:3-47:5).

- Plaintiff was terminated on December 20, 2002, for insubordination. (Defs.'s Ex. I).

- On or about October 15, 2003, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") claiming that he was subject to discrimination based on race and retaliated against for opposing unlawful practices. (Defs.'s Ex. AA).

- The EEOC issued a Right to Sue Letter on May 12, 2004. (Defs.' Ex. X).[4]

---

say. (Pl.'s Comp. at ¶49).

[4] Plaintiff alleges/discusses a slew of other discriminatory instances/allegations in his Amended Complaint.  They are listed very briefly below:

- Plaintiff alleges that Nurses on staff refused to treat inmates. (Pl.'s Dep. II at 158:7-21)
- Plaintiff alleged that inmates were prevented from having recreation. (Pl.'s Dep. II at 159:4-14).
- Plaintiff alleges that he was harassed by "constant threats, housing unit inspections and letters of counsel" from Defendants Ashton and Battle.  (Pl.'s Dep. II at 65:16-66:7).

• On October 5, 2005, Plaintiff filed a First Amended Complaint with this Court alleging the following twelve counts:

1) violations of Title VII for disparate treatment and hostile work environment;

2) retaliation in violation of Title VII based on Defendants' reaction to Plaintiff filing complaints and participating in hearings;

3) claims pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's Fourteenth Amendment right to equal protection based on alleged incidents of retaliation;

4) a claim that Defendants failed to act in good faith regarding Plaintiff's express and implied employment contract with the employer and that Defendants maliciously interfered with Plaintiff's contractual right to employment because of racial animus in violation of 42 U.S.C. § 1981;

5) a claim that Defendants were involved in acts to intentionally deny the Plaintiff his constitutional rights on the basis of race and did so in concert after agreement in violation of 42 U.S.C. § 1985;

6) violations of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 et seq.

---

• Plaintiff alleged that he received corrective counseling for not properly signing in and out of a logbook when going to another part of the prison but that another white corrections officer did not receive the corrective counseling for the same conduct for the same date.
• He alleged that a kitchen worker did not provide a Jewish inmate with food appropriate to his religious beliefs.
• Plaintiff alleged that a black corrections officer was disciplined for parking in an unauthorized area but a white officer was not, and that he was ordered to destroy reports on the white officer's violation. (Pl.'s Amend. Compl. at ¶¶ 21-23).
• Plaintiff alleged that at a July 24, 2002, meeting with Captain Walters, Walters directed profanity at Plaintiff. (Pl.'s Amend. Compl. at ¶ 41).

("NJLAD") for disparate treatment based on race;

7) hostile work environment in violation of the NJLAD;

8) unlawful retaliation in violation of the NJLAD because Plaintiff made internal complaints, filed grievances and participated in hearings against Defendants;

9) a claim that Defendants are liable for "aiding and abetting" discrimination in violation of the NJLAD;

10) that plaintiff was wrongfully discharged in violation of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1 et seq.;

11) common law breach of contract; and,

12) intentional infliction of emotional distress.

   At oral argument, Plaintiff conceded that many of his claims should be dismissed including: the disparate treatment claim contained in Count 1; Count 3 in its entirety; the official capacity allegations contained in Counts 4 and 5 and the individual capacity claims against Defendants Stevens and Lloyd; and, Counts 6, 10, 11 and 12 in toto. Moreover, Plaintiff has conceded that dismissal is appropriate as to Count 7; he does not brief individual liability in his supplemental submission and, in briefing Count 9, regarding LAD aiding and abetting, states that "[w]hile individual liability can't be based on their own discriminatory conduct, there is a cause of action ...for aiding and abetting."

   Therefore, this Court is left with analyzing the remaining claims in the instant motion which include: Count 1's Title VII

claim for hostile work environment; Count 2's claim for Title VII retaliation; Count 4's § 1981 claim against Defendant Ashton[5]; Count 5's § 1985 claim against Ashton and Walters[6]; Count 8's claim of NJLAD retaliation; and, Counts 8 and 9's NJLAD retaliation and aiding and abetting claims against Ashton, Walters and Haley.[7]

Plaintiff asserts that as a result of the alleged violations, he is entitled to the following forms of relief: reinstatement to the same position held before Defendants' wrongful actions or, in the alternative, future loss of earnings; reinstatement of full fringe benefits and seniority rights; compensation for lost wages and benefits; punitive damages; and, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest.  (Pl.'s Comp. at pp. 21).


**Summary Judgment Standard:**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[5] In his supplemental brief, Plaintiff only asserts this claim against Defendant Ashton.

[6] Plaintiff does not argue that Haley is liable pursuant to § 1985 in his supplemental brief.

[7] In his supplemental brief, Plaintiff states that "the record is barren with respect to Chief Rayford Stevens...the claims against him as an individual defendant should be dismissed." (Pl.'s Supp. Br. at 8).

law."[8]  Fed. R. Civ. P. 56©.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (<u>quoting</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[9] <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).


**Discussion:**

<u>a.</u>   <u>Claims Against the State of New Jersey/Department of Corrections and Individual Defendants in Their Official Capacities</u>.

---

[8] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  <u>See</u> <u>id</u>.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  <u>See</u> <u>id</u>.

[9] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005).

11

In their brief, Defendants argue that the allegations in the
Complaint against the State of New Jersey, the Department of
Corrections and the individual moving Defendants in their
official capacity are barred by the Eleventh Amendment.  The
Eleventh Amendment provides that, "[t]he Judicial power of the
United States shall not be construed to extend to any suit in law
or equity, commenced or prosecuted against one of the United
States by citizens of another State, or by Citizens or Subjects
of any Foreign State." U.S. Const. Amend. XI.

As a general proposition, a suit by private parties seeking
to impose a liability which must be paid from public funds in a
state treasury is barred from federal court by the Eleventh
Amendment, unless Eleventh Amendment immunity is waived by the
state itself or by federal statute.  See, e.g., Edelman v.
Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment
protects states and their agencies and departments from suit in
federal court regardless of the type of relief sought.  Pennhurst
State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).
Similarly, absent consent by a state, the Eleventh Amendment bars
federal court suits for money damages against state officers in
their official capacities.  See Kentucky v. Graham, 473 U.S. 159,
169 (1985).  Section 1983 does not override a state's Eleventh
Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) of Title 28

12

United States Code require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."  In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of Section 1983.  Will v. Michigan Dept. Of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

In his brief in opposition to Defendants' motion, Plaintiff concedes that the State of New Jersey and the Department of Corrections are entitled to such immunity with regard to Counts 7, 8, 9; thus, the Court will grant summary judgment in favor of the New Jersey Department of Corrections and the other Defendants in their official capacities as to those Counts.  Moreover, at oral argument, Plaintiff conceded that the official capacity actions contained in Counts 4 and 5 were barred.  Plaintiff maintains, however, that his NJLAD aiding and abetting (Count 9) claims are not barred by such immunity.

In their moving papers, Defendants assert that Plaintiffs NJLAD aiding and abetting claims against the individual Defendants should be dismissed because there is no individual liability under the NJLAD unless the employer is first found

liable.  (Defs.' Br. at 16).  More specifically, Defendants assert that since the employer, the DOC, cannot be held liable because of Eleventh Amendment immunity, the individual Defendants are not liable as aiders and abettors.  (Id.).  Plaintiff counters and says that individual liability is not necessarily predicated on employer liability in this context.

The law in this jurisdiction, on this particular question, is unclear: that is, can there be aiding and abetting liability pursuant to the NJLAD when the employer is not liable because of Eleventh Amendment immunity.  Three cases in this District (all of which are unpublished), address this exact issue - two of which support Defendants' proposition, Mitchell v. New Jersey Lottery, 2006 U.S. Dist. LEXIS 32559 (D.N.J. May 15, 2006) and Hanani v. State of New Jersey, 2005 U.S. Dist. LEXIS 43969 (D.N.J. May 25, 2005), and one that supports Plaintiff's argument, Uwalaka v. State of New Jersey, 2005 U.S. Dist. LEXIS 28121 (D.N.J. Nov. 15, 2005).

Normally, where an employer is not found liable, an individual employee cannot be found liable as an aider and abettor because, "it is fundamental to aiding and abetting liability that the aider and abettor acted in relation to a principal, here, the employer." Failla v. City of Passaic, 146 F.3d 149, 159 (3d Cir. 1998).  In light of this, Defendants opine that because the employer cannot be found liable pursuant to the NJLAD then no individual liability may be found. (Defs.' Br. at

14

16).

This Court is persuaded, however, by the reasoning employed by Judge Chesler in <u>Uwalaka v. State of New Jersey</u>, 2005 U.S. Dist. LEXIS 28121 (D.N.J. Nov. 15, 2005), that claims of individual liability can be sustained even where the employer is immune pursuant to the Eleventh Amendment.  The key issue is that where the employer is immune pursuant to the Eleventh Amendment, the employer has **not** been found **not liable** on the merits of a plaintiff's claim but rather there can be no finding of liability because of immunity.  In other words, there is a fundamental difference between "not liable on the merits" versus "cannot be found liable at all as a matter of law."

In <u>Uwalaka</u>, Judge Chesler, relying on the Supreme Court's opinion in <u>Dennis v. Sparks</u>, 449 U.S. 24 (1980), stated that "there is no reason to extend the sovereign immunity of the State to private parties of aiding and abetting a State employer in violation of the NJLAD statutes." <u>Uwalaka</u>, at 2005 U.S. Dist. LEXIS 28121 at *10.  This Court agrees.[10]  To say that there can be no finding of individual liability where the employer cannot be found liable because of immunity is to essentially extend that immunity to the individual defendants.  See <u>Uwalaka</u>, 2005 U.S.

---

[10] Courts in other jurisdictions have applied similar logic. <u>See</u> <u>Martin v. New York State Department of Correctional Servs</u>. 224 F. Supp. 2d 434 (N.D.N.Y. 2002) (finding that individual defendants could be held liable pursuant to aiding and abetting liability even where the employer, the Department of Corrections, was entitled to immunity).

Dist. LEXIS 28121 at *10.   Moreover, this Court does not view
this holding as violative of the holding in <u>Failla</u> , which
generally states that the employer must first be found liable,
because, as stated above, when immunity enters the equation, it
is not that the employer **has not** been found liable, it is that it
**cannot** be found liable.   Thus, this Court will address
Plaintiff's aiding and abetting claims below on the merits.


<u>Title VII Exclusivity:</u>

Defendants' brief includes a section asserting that
Plaintiff's Title VII claims are the exclusive remedy for some of
his allegations and, as a result, his claims brought pursuant to
42 U.S.C. 1981, 1983 and 1985 are improper.   Defendants are only
partially correct: Plaintiff's claim for retaliation, which is
being pursued under both Title VII and § 1983 "is not recognized
under constitutional principles, [and] may not be pursued through
Section 1983." <u>Blair v. City of Atlantic City</u>, 100 F. Supp. 2d
262, 267, n.3 (D.N.J. 2000).   Title VII does, indeed, provide the
exclusive remedy for retaliatory discharge.   <u>See</u> <u>Hargrave v.</u>
<u>County of Atlantic</u>, 262 F. Supp. 2d 393, 440 (D.N.J. 2003)
("courts have recognized that employment discrimination claims
based on theories of unlawful retaliation or disparate impact –
claims which owe their existence to Title VII and are not
recognized under general constitutional principles – may not be

16

pursued via § 1983").  Thus, to the extent Plaintiff seeks to pursue a retaliation claim under § 1983, that claim must be dismissed as a matter of law and Plaintiff conceded the point at oral argument.[11]

Defendants' argument that Plaintiff's § 1981 and § 1985 claims, which involve employment discrimination, are also exclusively remedied by Title VII fails.  As stated previously in this District, the argument that claims brought pursuant to § 1981 and § 1985 are preempted by Title VII when they are part of the same action "is simply misleading, and is clearly based on a misreading of the case law." Reynolds v. Borough of Avalon, 799 F. Supp. 442, 448 (D.N.J. 1992).

As stated in Reynolds, Great American Federal Savings and Loan Ass'n v. Novotny, 442 U.S. 366 (1979), does not stand for the proposition that Title VII necessarily preempts a Section 1985 action.  Instead, where, as here, a § 1985 claim "is based on some other federal source, such as the equal protection clause of the Fourteenth Amendment, the fact that the conduct can be said to violate Title VII as well does not operate to bar the 1985 claim." Id.  Thus, Plaintiff's § 1985 claims will not be dismissed on grounds of preemption by Title VII.  Morever, Plaintiff's § 1981 claims are not preempted by Title VII and

_____

[11] Plaintiff stated at oral argument that his § 1983 claim was based solely on a theory of retaliation.  Thus, Defendants are entitled to summary judgment on this claim.

17

should not be dismissed because of preemption.  <u>See</u> <u>id</u>. ("we see
no reason why the fact that the allegations may also be
actionable under Title VII should preclude plaintiff from
bringing a claim under § 1981.").


<u>Timeliness and Scope of EEOC Charge</u>:

     Defendants assert that several claims raised in the
Plaintiff's Complaint are separate and distinct from those raised
in the EEOC charge, and, therefore, should be barred.  (Defs.'
Br. at 12).  "The parameters of the civil action in the district
court are defined by the scope of the EEOC investigation which
can reasonably be expected to grow out of the charge of
discrimination."  <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394,
398-99 (3d Cir. 1976).  "Thus, any subsequent civil action may
only encompass forms of discrimination similar or related to
those filed in the EEOC charge."  <u>Kresefsky v. Panasonic Communc.</u>
<u>& Sys. Co.</u>, 169 F.R.D. 54, 61 (D.N.J. 1996).  A court may excuse
the EEOC exhaustion requirement, however, where conduct alleged
in a complaint is "fairly within the scope of [a] prior EEOC
[charge] or the investigation arising therefrom."  <u>Antol v.</u>
<u>Perry,</u> 82 F.3d 1291, 1295 (3d Cir. 1996).

     Defendants state that the claims raised in the EEOC charge
"solely allege[] discriminatory and retaliatory actions by the
DOC based on his race resulting in harassment in retaliation for
Lindsey's participation in a hearing with a co-worker and his

18

subsequent termination." (Defs.' Br. at 13). Defendants argue
that the instant Amended Complaint contains allegations of race
discrimination and retaliation "as to numerous claims that are
not listed in the EEOC charge." (Id.) These instances include:
allegations by Plaintiff that in 1997 he was subject to harsher
treatment than similarly situated, non-black officers; that in
1998 Plaintiff was threatened by Captain Ashton because of his
race; that in March 2000 he was re-assigned to another location;
and, that he received a written reprimand on August 13, 2001 for
failing to secure an inmate's television.[12]

Defendants assert that these allegations are separate and
distinct from those contained in the EEOC charge and, therefore,
Plaintiff cannot present these claims before this Court.
Plaintiff argues that since he references his letter of
resignation in the EEOC charge and that the letter itself refers
to discrimination over a three year period, that all conduct over
that period was included in the charge.

This Court believes that the earliest possible date fairly
encompassed within the scope of the EEOC charge is August 22,
2000, the date Plaintiff acted as a witness in the investigation
of the Angelo Soto incident. Conduct prior to that is not within

_____

[12] Defendants fail to make what is, perhaps, the more
appropriate argument: that some of these incidents, as discrete
acts of discrimination, are not actionable because they are time
barred (Plaintiff filed his EEOC charge on October 15, 2003).
See discussion infra.

the scope of Plaintiff's EEOC charge.  Even Defendants concede that "plaintiff received a right to sue letter based only on his EEOC complaint of harassment in retaliation for Lindsay's participation in a hearing...and this participation allegedly took place in December 2000." (Defs.' Br. at 14).

While Plaintiff lists the earliest date of discrimination on his charge as August 29, 2002, the narrative portion states that "[i]n 2001 I was a witness for a coworker...[and] [s]ubsequent to my participation in the investigation I was subjected to harassment." (Defs.' Ex. AA); see Reavis v. The Church Farm School, 204 U.S. Dist. LEXIS 6390 (E.D. Pa. 2004) (looking to narrative section of charge to help properly define its scope). It appears that Plaintiff mistakenly says 2001 in the narrative as opposed to 2000 – the date of the investigation that Plaintiff alleges in his charge led to harassment.  Clearly, the scope of the EEOC investigation encompassed incidents following the 2000 Soto investigation as evidenced by Plaintiff's letter to the EEOC.  (Pl.'s Ex. A); see Kovoor v. School Dist. of Philadelphia, 211 F. Supp. 2d 614, 620 (E.D. Pa. 2002) ("[w]hen considering the scope of the original charge courts must 'keep in mind that charges are often drafted by one who is not well versed in the art of legal description ... the scope of the original charge should be liberally construed.'")(quoting Hicks v. ABT Assoc., Inc., 572 F.2d 960, 965 (3d Cir. 1978)).  Because incidents prior to Plaintiff's participation in the Soto investigation

20

cannot be said to be fairly encompassed by the scope of the EEOC charge and investigation, however, Defendants are correct that the aforementioned incidents, which occurred prior to 2000, have not properly been exhausted and should not be considered individually actionable.

In addition, while Defendants fail to expand on their heading that the Title VII claims must be limited to those timely filed, the Court is aware that several of the instances of alleged actionable conduct may not have been properly exhausted within the time limits imposed under Title VII.  Specifically, Plaintiff filed his EEOC charge on October 15, 2003.  In an employment discrimination action, the limitations period begins with the "time of the discriminatory act."  Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 842 (3d Cir. 1992).  Claims brought pursuant to Title VII must be filed with the EEOC within "300 days after the alleged unlawful employment practice occurred." 29 U.S.C. § 626(d)(2).  300 days prior to October 15, 2003 is December 19, 2002 - thus, the only "actionable" adverse action timely presented by Plaintiff is his termination - unless some of the other actions are "preserved" by the continuing violation theory.  Absent a continuing violation, all discriminatory acts that are alleged to have occurred more than 300 days prior to the EEOC filing are time-barred.  See Nat'l Railroad Passenger Corp.,v. Morgan, 536 U.S. 101, 113 (2002).  However, an employee may use prior acts deemed time barred as evidence in support of a

timely claim.  Id.

As stated above, incidents occurring prior to August 22, 2000, are outside of the scope of the EEOC charge and investigation, and are thus, not properly before this Court.  The issue is, then, which post-August 22, 2000, actions have been timely asserted.  In Morgan, the Supreme Court specifically stated that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114.  In O'Connor v. City of Newark, 440 F. 3d 125, 127 (3d Cir. 2006), the Third Circuit compiled a non-exhaustive list of discrete acts, including "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation."  As such, Plaintiff's claims regarding the alleged acts of retaliation are discrete discriminatory acts and Plaintiff's December 20, 2002, termination is the only adverse action that may be timely considered for purposes of Count 2's retaliation claim.  However, previous retaliatory acts may be considered as evidence in support of this timely claim.[13]

However, Count 1 contains a hostile work environment claim.

_____

[13] Continuing violation theory may apply in the context of the NJLAD claims.  See Cortes v. University of Medicine and Dentistry of New Jersey, 391 F. Supp. 2d 298, 314 (D.N.J. 2005).  Morgan does apply to NJLAD claims.  O'Connor v. City of Newark, 440 F.3d 125, 130 (3d Cir. 2006)(finding that the statute of limitations formulas expressed in Morgan apply to LAD claims).

In <u>Morgan</u>, the Supreme Court stated that "a charge alleging a hostile work environment claim...will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." <u>Morgan</u>, 536 U.S. at 122.  Pursuant to the continuing violations theory, a "plaintiff must demonstrate that at least one act occurred within the filing period and that the harassment is more than the occurrence of isolated or sporadic acts of intentional discrimination." <u>Harley v. City of Philadelphia</u>, 2003 U.S. Dist. LEXIS 20191 at * 12 (E.D. Pa. Nov. 4, 2003) (citing <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754-55 (3d Cir. 1995)).

In the instant matter, Plaintiff's termination occurred during the applicable filing period and Plaintiff has alleged a consistent pattern of harassment.  While the Third Circuit has stated that a series of discrete acts cannot be aggregated under the continuing violations theory, <u>see</u> <u>O'Connor v. City of Newark</u>, 440 F.3d at 127, the type of conduct alleged by Plaintiff includes allegations of a continuing pattern of conduct including instances that are not "discrete acts."  For example, Plaintiff cites his consistent negative interactions with Lt. Battle, who, Plaintiff alleges, blamed Plaintiff for the discipline he received pursuant to the Soto incident.  Moreover, Plaintiff has alleged that he was harassed by "constant threats, housing unit inspections and letters of counsel" from Defendants Ashton and

23

Battle, (Pl.'s Dep. II at 65:16-66:7), that other black corrections officers were disciplined when white officers were not, (Pl.'s Amend. Compl. at ¶¶ 21-23), and that he was subject to constant corrective counseling.  These are not the types of discrete acts barred by the statute of limitations and may be considered with Plaintiff's hostile work environment claim.

<u>Title VII</u>:

The familiar <u>McDonnell Douglas</u> burden shifting framework applies to both remaining Title VII-based claims for hostile work environment, Count 1, and retaliation, Count 2.  Once the Plaintiff has established a prima facie claim, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  The burden then shifts back to the Plaintiff who must show that the nondiscriminatory reason articulated by the defendant is in fact a pretext for discrimination. <u>Id.</u> at 804.  "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 342 (3d Cir. 2006) (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994)).

- <u>Count 1 - Hostile Work Environment</u>

Plaintiff states that his hostile work environment

24

claim is not rooted in the "traditional racial" context. Instead, he alleges that, because of his complaints, he was retaliated against in such a severe or pervasive manner that a hostile work environment was created.  Plaintiff asks that this Court adopt the New Jersey Appellate Division's decision in <u>Cokus v. Bristol Myers Squibb Co.</u>, 362 N.J. Super. 366 (Law Div. 2002), where a similar claim was asserted under CEPA.  This Court notes that the only hostile work environment claim that remains is pursuant to Title VII and, therefore, this is an issue of federal law.

The Third Circuit recently discussed the cause of action for retaliatory harassment in <u>Jensen v. Potter</u>, 435 F.3d 444 (3d Cir. 2006).[14]  Pursuant to <u>Jensen</u>, a claim of retaliatory harassment can be shown by proof that (1) plaintiff suffered intentional discrimination because of his protected activity;[15] (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected plaintiff; (4) it would have detrimentally affected a reasonable person in the like circumstances; and (5) a basis for employer liability is present.  <u>Id.</u> at 449.

---

[14] Neither Plaintiff nor Defendant cited this case to the Court.  This Court informed the parties of the <u>Jensen</u> case at oral argument.  It is disappointing that neither party addressed <u>Jensen</u> in their supplemental papers.

[15] This prong is substantively similar to the typical retaliation claim requirement of a causal connection.  <u>Jensen</u>, 435 F.3d at 449 n.2.  A court may look at temporal proximity and whether a pattern of antagonism existed. <u>Id.</u>

While neither party addresses the <u>Jensen</u> test, this Court determines that there is a sufficient issue of material fact as to whether Plaintiff was subjected to retaliatory harassment.  As discussed in more detail below, there is an issue of fact as to whether Plaintiff was discriminated against because of his protected activity (see discussion of causal connection below in Title VII retaliation section), it is clear that Plaintiff was detrimentally affected, so much so that he felt compelled to resign, and that a reasonable person in similar circumstances would be similarly affected.  Finally, the record of consistent discipline following Plaintiff's participation in protected activity allows this Court to conclude that there is an issue of fact as to whether the alleged retaliatory harassment was severe or pervasive.  <u>See</u> <u>Miklos v. Principi</u>, 2006 U.S. Dist. LEXIS 37669 (W.D. Pa. Mar. 16, 2006) (finding that a series of negative events following protected activity sufficed to defeat summary judgment on severe or pervasive prong).

Plaintiff's long history of discipline following protected activity has also shown that there is an issue of fact as to whether Defendants' proffered legitimate reasons for its action is prextextual.  <u>See</u> <u>Cardenas v. Massey</u>, 269 F.3d 251, 261 (3d Cir. 2001) ("the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in

evaluation a hostile work environment claim."). Thus, the Court will deny summary judgment as to the retaliatory harassment claim pursuant to Title VII.

- <u>Count 2 – Unlawful Retaliation</u>

"To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting <u>Nelson v. Upsala Coll.</u>, 51 F.3d 383, 386 (3d Cir. 1995)). With regard to the second element of the prima facie case, a plaintiff must show "that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Id.</u> (quoting <u>Burlington N. & Sante Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 2415 (2006)). Pursuant to the third prong, "a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 341-42.

Defendants concede that Plaintiff engaged in protected

27

activity and suffered an adverse action when he was terminated. (Defs.' Br. at 25).  This cause of action, therefore, turns on whether Plaintiff can establish the requisite causal connection. Defendants argue that there is no connection because there is no temporal proximity between Plaintiff's last EED charge filed on October, 24, 2001, and, even if temporal proximity is established, there is no other evidence to establish a causal link. (Defs.' Br. at 26).  Additionally, Defendants argue that even if Plaintiff is able to establish a prima facie case, he cannot show that their reason for his termination, i.e., insubordination, is pretextual.

Plaintiff alleges that on July 25, 2002, he began providing information to the Special Investigations Division "relating to discrimination and the policies of the DOC...." (Pl.'s Br. at 39).  Then, 20 days after submitting his letter of resignation, which, as testified to by Melinda Haley, made allegations of discrimination and hostile environment in the workplace, Plaintiff was terminated. (Haley Dep. at 99:19-25).  Taking all the circumstances into consideration and construing the evidence in a light most favorable to Plaintiff, this Court holds that the termination was temporally proximate to the protected activity.

This Court is mindful, however, that temporal proximity alone is not enough to establish the requisite causal link. Cardenas v. Massey, 269 F.3d 251, 264 (3d Cir. 2001) (citations omitted).  Plaintiff contends that the past history of

28

retaliation supports his causal connection.  As discussed above, this Court may consider such prior acts as evidence in support of a timely claim.  Morgan, 536 U.S. at 113 (2002).  Plaintiff's long history of complaints and participation in investigations coupled with the fact that Plaintiff was terminated soon after complaining, again, of a discriminatory atmosphere, is sufficient to establish a prima facie case of retaliation.  Certainly, termination would dissuade a reasonable employee from opposing discrimination.  Moore, 461 F.3d at 341.

The burden then shifts to Defendants to articulate a legitimate, non-discriminatory reason for the adverse action, which, Defendants claim, is Plaintiff's insubordination for failing to report to work as ordered.  Because Defendants have given a reason, the burden shifts back to the Plaintiff to "convince the factfinder that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."  Moore, 461 F.3d at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)).

"To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions."  Id.  This Court finds that Plaintiff has created an issue of fact sufficient to go to a jury on his claim of retaliation.  Plaintiff's long history of EED complaints or participation in investigations followed by

29

discipline would allow a factfinder to reasonably conclude that
the ultimate termination was actually motivated by retaliatory
animus and not insubordination, thus creating an issue of fact as
to whether or not Defendants' proffered reason is pretexutal.
Thus, Defendants' motion for summary judgment as to Count 2 is
denied.


Count 4 - § 1981:

     This Court notes, as a preliminary matter, that it is
unsettled in this Circuit whether there is an independent cause
of action pursuant to Section 1981.  See Cardenas, 269 F.3d at
268 (discussing disagreement over whether 1991 amendments to §
1981 abrogate the Supreme Court's decision in Jett v. Dallas
Indep. Ach. Dist., 491 U.S. 701 (1989) by creating an implied
independent cause of action).  While neither party raises this
issue, this Court is inclined to follow the reasoning of Riley v.
Delaware River and Bay Auth., 457 F. Supp. 2d 505, 512 (D. Del.
Oct. 25, 2006), which finds that a § 1981 claim can proceed even
where it was not brought pursuant to § 1983, in light of
Cardenas.  But see Young v. Bethlehem Area Vo-Tech School, 2007
U.S. Dist. LEXIS 13531 at * 13-14 (E.D. Pa. Feb. 28,
2007)(finding that a cause of action against an individual
capacity defendant must be pursuant to the remedial provisions of
§ 1983).

     Section 1981, which prohibits racial discrimination in the
                              30

making and enforcement of contracts, provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (a).

Individual liability under § 1981 "when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable." Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001). Section 1981 claims are analyzed pursuant to the well known burden-shifting framework introduced in the United States Supreme Court case, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), discussed above.

In his supplemental brief (referencing his initial opposition papers), Plaintiff contends that there is a material issue of fact as to whether Defendant Ashton[16] is liable pursuant to § 1981 in his individual capacity. In his original brief, Plaintiff argued that he had a viable § 1981 claim for retaliation; in the supplemental papers, Plaintiff argues a "disparate treatment" type claim. Each will be discussed below.

---

[16] Plaintiff is no longer asserting a § 1981 claim against any other Defendants.

31

With regard to disparate treatment, "pursuant to Section 1981, a plaintiff must demonstrate the following: '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts.'" Alexis v. Int'l Harvester, Inc., 2003 U.S. Dist. LEXIS 15671 at *7-8 (E.D. Pa. 2003) (quoting Pryor v. NCAA, 288 F.3d 548, 569 (3d Cir. 2002) (citations omitted)).  Defendants argue that Plaintiff has failed to present evidence that shows Ashton intended "to discriminate on the basis of race."  This Court agrees; other than Plaintiff's allegation that he was disciplined for failing to sign a log book while a white officer was not, which is not supported by competent evidence, there is no basis by which a reasonable jury could conclude that Ashton's alleged actions were based on Plaintiff's race or class.  Therefore, Plaintiff fails to sustain a § 1981 claim on those grounds.

However, Plaintiff survives a retaliation analysis pursuant to § 1981.  To establish a prima facie case of retaliation under § 1981, Plaintiff must show that, (1) he engaged in a protected activity, (2) suffered an adverse employment action after or at the same time as the protected activity, and (3) there was a causal connection between the protected activity and the adverse action.  Stokes v. Accounts Receivable Mgmt., 2006 U.S. Dist. LEXIS 80505 (D.N.J. Nov. 2, 2006).  The record contains evidence

that Ashton disciplined Plaintiff soon after he participated in protected activity.  This, coupled with the Court's above analysis regarding retaliation, leads this Court to the conclusion that it cannot say as a matter of law that summary judgment is appropriate as to Defendant Ashton.  See id. (denying summary judgment on § 1981 claim where plaintiff was fired by an individual two months after complaining about individual's racist comment).

Count 5 - § 1985

The four basic elements of a prima facie case pursuant to § 1985 are:

(1) a conspiracy; (2) motivated by racial or class-based discriminatory animus; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or a deprivation of any right or privilege.

Chambers v. Commonwealth of Pennsylvania, 2006 U.S. Dist. LEXIS 93658 at *30 (M.D. Pa. Dec. 28, 2006).  Circumstantial evidence is sufficient to prove evidence of conspiracy.  Id.

The Court requested supplemental briefing on this issue as Plaintiff's initial motion papers relied exclusively on conclusory statements unsupported by evidence from the record such as the assertion that, "the circumstantial evidence is sufficient to infer that Ashton and Walters, knowing all they did, did not stop Battle because they agreed with him to remove Lindsey."  (Pl.'s Br at 42).

33

Plaintiff's supplemental brief asserts that Defendants Ashton and Walters formed a conspiracy with Battle to deprive Plaintiff of his rights.  This Court finds, however, that there is insufficient evidence in the record from which a reasonable jury could conclude that a conspiracy to deprive Plaintiff of his rights existed.  Plaintiff, again, relies largely on conclusory statements such as "the record is clear that [Ashton and Battle] worked in concert to retaliate against plaintiff." (Pl.'s Supp. Br. at 4).

Plaintiff relies only on his own accusations as contained in his deposition testimony as evidence that a conspiracy existed. The only other evidence from the record utilized by Plaintiff is Exhibit L which, according to Plaintiff,  "contain[s] a statement from Sgt. Callahan that Battle would enlist the aid of others to coverup his retaliation against Lindsay." (Pl.'s Supp. Br. at 4). A review of Exhibit L reveals, however, that Sgt. Callahan in no way implied that Ashton and/or Walters were involved in the alleged cover-up by Battle.  Moreover, simply because Ashton, Battle and Walters talked about Lindsey and were present at a meeting where Plaintiff was "chastise[d]" does not provide sufficient evidence from which a reasonable jury could infer that a conspiracy existed to deprive Plaintiff of his rights.

Alternatively, even if Plaintiff could establish a conspiracy, he has pointed to no evidence whatsoever demonstrating that such action was based on racial or class-based

34

animus, thus undermining the establishment of a prima facie case.
See <u>Davis v. Twp. of Paulsboro</u>, 421 F. Supp. 2d 835, 846 (D.N.J.
2006) (stating that a plaintiff must put forth evidence of racial
discrimination to establish a violation of § 1985).  Therefore,
because the record lacks evidence from which a jury could
conclude that Plaintiff has presented a prima facie case pursuant
to § 1985, summary judgment is appropriate.

<u>Counts 8 and 9 - NJLAD Retaliation and Aiding and Abetting:</u>

•    Individual Liability for Retaliation

There is a cause of action against individuals for
retaliation pursuant to the NJLAD.  N.J. Stat. Ann. 10:5-12(d)
(stating that it is unlawful for "any person to take reprisals
against any person because that person has opposed any practices
or acts [that the Act prohibits]"; <u>see</u> <u>Cortes v. University of
Medicine and Dentistry of New Jersey</u>, 391 F. Supp. 2d 298, 314
(D.N.J. 2005) (noting that NJLAD expressly contemplates direct
liability for individual supervisory employees).

The record is devoid of any evidence that Defendant Haley
retaliated against the Plaintiff and therefore, summary judgment
is appropriate.[17]  However, because there is an issue of fact as
to whether Plaintiff was disciplined by supervisors Ashton and
Walters because of his protected activity, a jury could conclude

---

[17] Indeed, Plaintiff admits as much by not discussing the
issue of Haley's individual liability for retaliation at all.

35

that Ashton and Walters were individually liable for their conduct and that the reasons offered for their actions were pretext for retaliation in light of the surrounding circumstances discussed at length above.  Accordingly, the Court will deny summary judgment to the extent that Plaintiff seeks to pursue this claim against Ashton and Walters.  See Cortes, 391 F. Supp. 2d at 314 (denying summary judgment where there was an issue of fact as to the involvement of individual defendants in potential unlawful retaliation).

• Aiding and Abetting

The relevant aiding and abetting statute provides that it shall be an unlawful employment practice or unlawful discrimination "for any person, whether an employer or an employee or not, to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."  N.J. Stat. Ann. § 10:5-12(e).  In order to hold an employee liable as an aider or abettor, a plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'" Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (quoting Hurley v. Atlantic City Police Dep't, 174 F.3d

95, 127 (3d Cir. 1999)).[18]  The Court also notes that "inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement."  Id. at 158 n. 11.

Plaintiff argues that Haley is an aider and abetter because she acquiesced and supported the conduct of other Defendants at the DOC mainly by "not substantiat[ing] any of Plaintiff's complaints." (Pl.'s Supp. Br. at 7).  While deliberate indifference may form the basis of liability - there is no record that Haley was deliberately indifferent to Plaintiff's problems. Moreover, Plaintiff bases Haley's liability on the fact that she did not substantiate Plaintiff's claims - but, this was clearly NOT her job.  As spelled out in Haley's deposition testimony - her role was only to investigate the allegations; she did NOT make the determination as to whether the claim was substantiated or not.  (See Haley's Dep., Defs.' Ex. D at 62:23 ("Investigators

---

[18] In addition,

> Employees are not liable as aider and abettor merely because they had some role, or knowledge or involvement. Rather, the degree of involvement, knowledge and culpability required as a basis for liability is heightened by the standard that the Restatement sets forth and we adopt.  Only those employees who meet this heightened standard will be aiders and abettors. It is important that this standard be set above mere knowledge and/or implementation, lest a reverse respondeat superior liability could be created under the guise of aiding and abetting.

Failla, 146 F.3d at 159.

37

don't make conclusions")).  This undermines the very basis of
Plaintiff's theory of liability.  Because there is no evidence
that Haley was "aware of, but ignored [Plaintiff's] cries for
help or defects in the investigation," summary judgment is
appropriate as to Defendant Haley.  <u>Cardenas</u>, 269 F.3d at 268.

There is, however, a material issue of fact as to whether
either Ashton or Walters were actively involved in the
discrimination alleged.  Even though Defendants argue that there
is no evidence of active involvement, this Court has recounted at
length the various instances of discipline that Plaintiff
received via Ashton and Walters and has discussed the reasons why
a reasonable jury could conclude that such actions were
retaliatory (<u>see</u> discussion <u>supra</u> at 28-29).  Moreover, a
reasonable jury could find that the reason given for their
actions, i.e., insubordination, is pretextual in light of the
surrounding circumstances.  Thus, summary judgment is denied as
to Ashton and Walters.

<u>Availability of Punitive Damages</u>:

As an initial matter, the Court notes that there are no
punitive damages available pursuant to Title VII in the instant
case as "government agencies... are expressly exempted from
punitive damage claims under Title VII." <u>Gaston v. State Dep't of
Law & Pub. Safety</u>, 2006 U.S. Dist. LEXIS 17206 at *21 n.4 (D.N.J.
April 5, 2006); 42 U.S.C. § 1981a(b)(1) (allowing limited

38

punitive damages "against a respondent (other than a government, government agency or political subdivision)").  See also Merritt v. Delaware River Port Authority, 1998 U.S. Dist. LEXIS 18649, 1998 WL 827320, *1 (E.D. Pa. 1998) ("The 1991 Amendments to Title VII expressly exempt governments, governmental agencies, and political subdivisions from liability for punitive damages under Title VII.").

Under the NJLAD, the legal standard for punitive damage claims is a matter of state law.  Arpajian, 2005 U.S. Dist. LEXIS 1812042 at * 36) (citing Griffiths v. CIGNA Corp., 857 F. Supp. 399, 409-10 (E.D. Pa. 1994), aff'd, 60 F.3d 814 (3d Cir. 1995)).  Punitive damages, if available, are only available under the "heightened standard" of liability established in Lehmann v. Toys 'R Us, Inc., 132 N.J. 587 (N.J. 1993), in which evidence exists of "actual participation by upper management or willful indifference" to such violations.  Id.  Because issues of fact remain at this time with regard to Plaintiff's NJLAD claims, this Court is precluded from ruling at this time that, as a matter of law, Plaintiff is not entitled to recover punitive damages.  See Santosuosso v. NovaCare Rehab., 462 F. Supp. 2d 590, 601 (D.N.J. 2006) (denying summary judgment as to availability of punitive damages for NJLAD claims where issues of fact remained).

**Conclusion:**

For the aforementioned reasons, Defendants' motion for

summary judgment will be granted <u>except</u> as it pertains to Count 1 - the claim for retaliatory harassment in violation of Title VII, Count 2 - the claim for retaliation in violation of Title VII, Count 4 - retaliation claim against Ashton in violation of § 1981, and Counts 8 & 9 - liability of Ashton and Walters only for retaliation and aiding and abetting in violation of the NJLAD. As to these specific claims, summary judgment is denied because genuine issues of material fact remain.  Finally, this Court will not grant summary judgment as to the availability of punitive damages at this time.

     An accompanying Order will issue this date.


Dated: <u>March 14, 2007</u>        <u>s/Renée Marie Bumb</u>
                            RENÉE MARIE BUMB
                            United States District Judge